PETITION OF EDWARD N. BROWNING AND GEORGE W. BROWN-ING for an Opinion of the Court.

A testator by the fifth clause of his will devised certain realty, subject to legacy charges, to A. and B. "for and during the term of their natural lives, and after them equally to their children, their heirs and assigns forever." By the eleventh clause of his will the testator added, "In clause fifth of my will my intention and meaning is that, after the decease of said A. and B., or either of them, one half of said estates is to descend to said A.'s heirs and assigns, and the other half to descend to said B.'s heirs and assigns."

*Held,* that, under the eleventh clause explaining the fifth, A. and B., according to the rule in Shelley's case, took each an undivided half of the realty in fee simple.

CASE STATED for an opinion of the court under Pub. Stat. R. I. cap. 192, § 23.

*Providence, February 9,* 1889. DURFEE, C. J. The case stated shows that the late Abijah Browning died leaving a will, which has been duly proved, by the fifth clause of which he devised certain real and personal property, subject to certain lega-

cies charged thereon, to his half brothers, Edward N. Browning and George W. Browning, the petitioners, "for and during the term of their natural lives, and after them equally to their children, their heirs and assigns forever." The eleventh clause of the will is as follows, to wit: "In clause fifth of my will, my intention and meaning is, that, after the decease of said Edward N. and George W. Browning, or either of them, one half of said estates is to descend to said Edward's heirs and assigns, and the other half to descend to said George's heirs and assigns." The case also shows that Edward has contracted to sell to George, and George has contracted to purchase of Edward, the latter's half of said estate, subject to the charges, if Edward can make a good and indefeasible title thereto in fee simple, and it propounds the question, whether he takes and can convey by his deed an indefeasible estate in fee simple in the one undivided half of said estate, and, if not, what estate does he take therein under said will.

We think there is no doubt that the fifth clause taken by itself would give, both under our statute and at common law, the estate in equal moieties to Edward and George for life, and after them in remainder to their children respectively, in fee simple. Pub. Stat. R. I. cap. 182, § 2 ;[1] 3 Greenleaf Cruise Dig. Tit. XXXVIII. cap. 14, §§ 39–43 ; Smith v. Chapman, 1 Hen. & M. 240, 290–294. The question is, whether this disposition is altered by the eleventh clause so that Edward and George, instead of taking life estates merely, take estates in fee simple under the rule in Shelley's case. If, in place of the words "and after them equally to their children, their heirs and assigns forever," in the fifth clause, we substitute the words in which the testator states his intention and meaning, we shall have first a. devise to Edward and George, "for and during the term of their natural lives," and then the following, to wit: "and after the decease of said Edward N. and George

---

[1] As follows :

"SECT. 2. No person seized in fee simple shall have a right to devise any estate in fee tail for a longer time than to the children of the first devisee; and a devise for life to any person, and to the children or issue generally of such devisee, in fee simple, shall not vest a fee tail estate in the first devisee, but an estate for life only, and the remainder shall, on his decease, vest in his children or issue generally, agreeably to the direction of such will."

W. Browning, or either of them, one half of said estates is to descend to said Edward's heirs and assigns, and the other half to descend to said George's heirs and assigns." If the clause had been originally so written, we think there can be no doubt that, notwithstanding some inaptnesses of expression, it would have to be construed as a devise to Edward and George for life as tenants in common, with remainders to their heirs and assigns respectively, which under the rule in Shelley's case would be a devise of one undivided half of the estates to each of them in fee simple.   The eleventh clause, however, purports to be simply explanatory of the fifth, and must be considered in that light, and the question is, whether, considering it so, we reach any different conclusion. The construction in this view is not wholly free from doubt, but the eleventh clause contains two expressions which, as they are connected with each other, seem to us to merit special attention. The clause declares " one half of said estates is to *descend* to said Edward's *heirs and assigns*, and the other half to *descend* to said George's *heirs and assigns*." If the first takers take simply life estates, there will be nothing to *descend* from them to their heirs. The implication is that a fee was intended to be given to Edward and George.   There are cases in which the word " descend " has been taken in this sense. *Eaton* v. *Tillinghast, Trustee*, 4 R. I. 276, 280 ; *Griswell's Appeal*, 41 Pa. St. 288.   Furthermore, the estates are not only to *descend*, they are to *descend* to *heirs and assigns*.   The connection is significant, for the words " heirs and assigns " are the common words of inheritance or limitation.   If the word " heirs " had been used alone, it might be supposed that it was used, not in its technical sense to signify the entire line of descent, but popularly to signify the immediate heirs, or the persons answering to the description of heirs at the death of the first takers.   The joinder of the two words *heirs* and *assigns* militates against this view ; for mere tenants for life could have no assigns to take their estates after them, whereas tenants in fee could devise their estates, and the devisees would be their testamentary assigns.   *Baily* v. *De Crespigny*, 10 B. & S. 1, 12.   The two expressions both conflict with the supposition that Edward and George were intended to take only as life tenants ; and considering the rigor of the rule in Shelley's case, and the technical strin-

gency of the precedents, we are of opinion that said Edward and George must be held to have taken the estates in fee simple. And see *Angell, Petitioner,* 13 R. I. 630, and *Burges* v. *Thompson,* 13 R. I. 712, and cases cited.

The manner in which the legacies are charged favors this construction. The form of the charge is this, to wit: The devise is to Edward and George, as before stated, " they, said Edward and George, paying *out of the same* five hundred dollars to each of my half sisters, Ida May Browning and Roby Ann Browning, within five years from my decease, to be paid to them in annual instalments of one hundred dollars, on the 25th day of December, in each year."

We therefore declare it to be our opinion that Edward Browning took under the will of the late Abijah Browning an undivided half of the land, described in the fifth clause thereof, in fee simple, and can by his deed convey to his brother George an indefeasible estate in fee simple therein.                *Order accordingly.*

*James Tillinghast,* for petitioners.